459 So.2d 714 (1984)
STATE of Louisiana
v.
Daniel PATTERSON.
No. KA-2211.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
*716 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Mary Charlotte McMullan, Joanne C. Marier, Asst. Dist. Attys., New Orleans, for appellee.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for appellant.
Before CIACCIO, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
Defendant, Daniel Patterson, was charged by bill of information with the July 7, 1983 simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2.[1] On July 25, 1983, defendant was arraigned and pled not guilty. Trial was held on January 19, 1984 and defendant was found guilty of attempted simple burglary by a six person jury. On February 9, 1984, defendant filed a motion for a new trial which was denied. On that same day, he was sentenced to serve six (6) years at hard labor with credit for time served. Subsequently on May 14, 1984 the State filed a multiple bill of information alleging defendant to be a Habitual Offender under La. R.S. 15:529.1.[2] A hearing was held on June 5, 1984 and the court, after overruling defendant's Motion to Quash Multiple Bill, sentenced defendant to serve twenty (20) years in the custody of the Department of Corrections as a multiple offender.
FACTS:
On July 7, 1983, at approximately 7:25 p.m., Gladys Toussaint, while watering her garden, saw a man exit a brown Ford Torino automobile parked in front of a vacant house next door to her at 1716 Alvar Street. She watched the man walk up the driveway of the house. The house had been vacant for two years.
Shortly thereafter, at approximately 7:45 p.m., Sarah Sturgis, who resided on the other side of the unoccupied house, looked across the driveway and noticed that the window directly across from hers was open. She then went to the front of the house, saw the strange car and called police. Within several minutes, she heard a horn blow and saw the police approach from both corners. She went back to her den window and saw a man exit the vacant house from the open window. He was wearing white sneakers, a white shirt, blue *717 jeans and a cap. In his hand he held a screwdriver. It was still daylight. She watched the man jump down from the window and run down the driveway. The car then pulled away.
When the police arrived at the scene, Ms. Sturgis gave them a description of the car and the license number. Using this information, they apprehended the defendant seven to ten blocks away. In the car were three other people. The police transported all four persons back to the scene of the crime where Ms. Sturgis singled out the defendant as the man she saw exiting the window. He was arrested and transported to central lockup.
Crime lab personnel examined the crime scene. The window from which defendant exited had been forced open. Beneath it, on the grass, lay a pair of pliers. There were grass stains below the point of entry and grass stains on defendant's shoes. Inside the house was evidence that a window air conditioning unit had been removed and dragged from another room.
The vacant house is part of an estate represented by attorney, Kenneth Ward. Ward testified that, as attorney for the estate, he had exclusive control and authority over the property. He stated that he had never seen the defendant before the day of trial and had not given Patterson permission to enter the house. He further testified that he had been on the premises in May or June and all of the air conditioning units were in their respective windows at the time of his visit.
At trial, defendant denied ever being on the premises. He testified he had been walking in his mother's neighborhood that evening when a friend asked if he wanted a ride. He got into the car with his friend and two other people. Shortly thereafter, the car was stopped by police.
On cross examination, defendant admitted to four prior convictions, three for receiving stolen property and one drug conviction. No other witnesses testified for the defense.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The court erred by refusing to declare a mistrial during the testimony of a state witness who made prejudicial and unsolicited remarks about other crimes not related to the evidence in this case.
2) The court erred by not granting defendant a new trial based on sufficient evidence to sustain a conviction for attempted simple burglary.
3) The trial court erred when it denied defendant's Motion to Quash the Multiple Bill as untimely filed.[3]
ASSIGNMENT OF ERROR 1:
Defendant contends the trial court erred in denying his motion for mistrial based on unsolicited, non-responsive remarks made by a prosecution witness on cross-examination.[4]
Mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982). An admonition to the jury to cure possible prejudice is sufficient when the offending remarks are made by a State's witness. C.Cr.P. Art. 771. When no request for mistrial or admonition to disregard is made at trial, and an objection is sustained, the defendant cannot complain of the alleged error on appeal. State v. Michel, 422 So.2d 1115 (La.1982). Moreover, unsolicited and non-responsive remarks made by a witness cannot be charged against the State to *718 require reversal of a conviction. State v. Perry, 420 So.2d 139 (La.1982).
In the instant case, both remarks were unsolicited, nonresponsive and made on cross-examination. The trial judge sustained defense counsel's objection to the witness's remark about defendant's drugged appearance. No request for a mistrial or admonition to the jury was made. Defense counsel merely requested the court to admonish the witness to limit her answers to the questions, which the court promptly did.
While the witness did allude to other burglaries in the neighborhood, she did not tie the defendant to those crimes. In compliance with C.Cr.P. Art. 771, the court admonished the jury to disregard her remarks. This assignment of error is without merit.
ASSIGNMENT OF ERROR 2:
Defendant contends the trial court's denial of his motion for a new trial was error, as there was insufficient evidence of defendant's intent to commit theft or other felony while on the premises.
Simple burglary is the unauthorized entry of any dwelling, vehicle, watercraft, or other structure, movable or immovable with the intent to commit theft or other felony. LSA R.S. 14:62.
Specific intent to commit theft or other felony is required for attempted simple burglary, State v. Jones, 426 So.2d 1323, (La.1983); State v. Marcello, 385 So.2d 244 (La.1980), and may be inferred from the circumstances. LSA R.S. 14:10.[5]
A defendant's flight from the scene of a crime indicates consciousness of guilt, and as such, is one of the circumstances from which guilt may be inferred. State v. Fuller, 418 So.2d 591 (La.1982).
With respect to the question of sufficiency of evidence, our Supreme Court in State v. Camp, 446 So.2d 1207 (La.1984), stated:
"... the standard of appellate review of a conviction is the same in all cases, whether or not circumstantial evidence is involved. The evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant is guilty of the crime. Nevertheless the rule stated in Section 438 [La.R.S. 15:438] is useful in determining the existence of a reasonable doubt, because when the overall evidence, direct and circumstantial, does not exclude a reasonable hypothesis of innocence, there exists a reasonable doubt as to guilt." Id. at 1209.

Defendant does not deny his presence in the house, but rather, likens it to that in State v. Ricks, 428 So.2d 794 (La.1983). In Ricks, the defendant claimed a long association with the victim, stated he had painted her apartment and that he had gone to her apartment for a visit, unaware that a male friend was staying there. No burglary tools were found on his person nor was there any other evidence of criminal intent.
In the instant case, Ms. Sturgis testified she observed the defendant climbing out of the window of the house with a screwdriver in his hand. A pair of pliers was found on the grass. An air conditioner had been removed from a window in the adjoining room and dragged to a spot under the exiting window. When the police were approaching the scene, the driver of the car honked the horn and defendant made a hurried exit.
Given the foregoing facts, there was sufficient evidence for the jury to have concluded that defendant broke into the vacant house with the requisite intent to commit theft, to the exclusion of every *719 reasonable hypothesis of innocence. This assignment of error is without merit.
ASSIGNMENT OF ERROR 3:
Defendant contends the trial court erred in denying the motion to quash the State's multiple bill as untimely filed.
La.R.S. 15:529.1 (The Habitual Offender Law) does not prescribe a specific period in which the district attorney must file a multiple bill. The courts, however, have held it must be filed within a reasonable time after the prosecution becomes aware a defendant has a prior felony record. State v. Broussard, 416 So.2d 109 (La.1982). Our Supreme Court has held that filing a multiple bill weeks after sentencing is timely but filing a bill thirteen months after sentencing and three months prior to the date that defendant becomes eligible for parole was untimely. State v. Broussard, supra; State v. Wilson, 360 So.2d 166 (La.1978); State v. Bell, 324 So.2d 451 (La. 1975).
In the instant case, the multiple bill was filed on May 7, 1984, three months from the original sentencing of February 9, 1984. After a careful reading of the record, we find no manifest error in the trial judge's finding that the delay in filing was reasonable and with good reason.[6] The trial judge correctly explained to defendant that the State had no control over the preparation of the guilty plea transcript in a previous state conviction, of the receipt of the documents from federal authorities on a prior federal conviction, and that the filing of the bill without those requisite documents to prove the bill would have been meaningless. This assignment of error is without merit.
ERRORS PATENT:
A review of the record indicates that defendant was originally sentenced on February 9, 1984 immediately after his motion for a new trial was denied. There is nothing in the minutes to reflect that the defendant waived further delays. Code of Criminal Procedure Article 873 mandates a twenty four hour delay before sentencing after the denial of a motion for new trial or in arrest of judgment unless defendant has waived further delays. Thus, the trial court's failure to comply with the provisions of Article 873 at the original sentencing is an error patent. Whether this error merits remand for resentencing depends on whether this court finds that the rights of the accused were substantially affected. The error must be evaluated in the light of its potential impact on the fairness of the lower court proceedings. State v. White, 404 So.2d 1202 (La.1981); C.Cr.P. Art. 921.
No objection was made to the sentencing or to the sentence, nor was there a showing that the defendant had been prejudiced. Further, defendant's original sentence was later vacated and defendant was re-sentenced as a multiple offender.
For the reasons assigned above, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 14:62.2 provides:

"Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60."
[2] La.R.S. 15:529.1 provides:

"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction;
(2) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then,
(a) The person shall be sentenced to imprisonment for any term not less than one-half the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or ...
(D) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state or of the United States; of any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction..."
[3] Because defendant's appeal had already been filed and lodged with this court, defendant applied for writs of certiorari, prohibition and mandamus to review the trial courts denial of the Motion to Quash Multiple Bill (K-2756). The writ application was granted and consolidated in this appeal.
[4] The remarks were made by Ms. Sturgis who commented upon the defendant's drugged appearance and the rash of burglaries in the neighborhood.
[5] La.R.S. 14:10 provides:

"Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."
[6] This court is well aware of the unpublished opinion in the matter of State v. McCoy, No. K-1794 handed down March 12, 1984, but find it inapplicable in the instant case.